No. 38,351

CHARLES HELLER and ED J. SCHNEIDER, *Appellees*, v. RAYMOND ROUNKLES, FORREST MOORE and WALTER HELLER, District Board of Joint Rural High School District No. 1, Mitchell and Lincoln Counties, Kansas, *Appellants*.

(232 P. 2d 225)

Opinion filed June 9, 1951.

R. L. *Hamilton* and *Tweed W. Ross,* both of Beloit, argued the cause and were on the briefs for the appellants.

*Theodore M. Metz,* of Lincoln, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action by resident taxpayers of a rural high school district to enjoin the issuance of bonds by the district, as more fully set out hereafter.

As the result of motions directed at the original petition, the plaintiffs filed their amended petition, which so far as need be mentioned, alleged that the rural high school district and its officers, hereafter referred to generally as the defendants, on March 20, 1950, held a purported election for the purpose of voting bonds of the district in the sum of $95,000 for certain improvements, and thereafter adopted a resolution declaring the proposition submitted to have carried and ordering the bonds issued; that the election was irregularly and illegally called and held for a number of reasons including that the notices of the election did not inform the electors of the district of the nature and extent of the improvements to be made and that the improvements to be made were to cost a sum greater than the amount of the bonds; that the election was not called and held for the purpose of voting bonds to equip, enlarge, remodel and repair an existing schoolhouse; that certain ballots were illegally cast and that three named persons who were not legal residents of the district were permitted to vote and voted in favor of the bonds and that a majority of the legal electors voting failed to vote for the issuance of the bonds; that notwithstanding, the defendants were about to issue the bonds and would do so unless enjoined and thus create an illegal assessment and tax against the property of the plaintiffs and others within the district and that plaintiffs had no adequate remedy at law.

The defendants answered, denying generally, but admitting that

plaintiffs were residents of the district and that an election had been held and alleging that the election was legal and valid in all respects and that the only persons who voted at the election were legal residents of the district. It was also alleged that plaintiffs could not complain regarding the votes of any persons whose ballots were illegally cast for the reason that none of the persons voting were challenged and there was no way to determine how they voted. Other allegations of the answer need no present notice, nor does the plaintiffs' reply.

The cause was tried by Honorable George L. Allison as judge pro tem. The record does not disclose affirmatively that either of the parties requested findings of fact and conclusions of law, but after both parties had rested the trial court directed that the parties file their requested findings and conclusions and the abstract discloses that defendants complied. Later and on September 23, 1950, the court disposed of the case and announced it had not had time to prepare findings of fact and conclusions of law but it did state the election was illegal and void. As the result of colloquy between court and counsel the trial court stated its conclusions as to the ultimate facts. The parties were unable to agree on a journal entry. On October 16, 1950, and after the term for which Judge Allison had been appointed as judge pro tem had expired, he signed a journal entry of judgment and prepared findings of fact and conclusions of law, all of which were filed the next day. In due time the defendants filed their motion to have stricken the findings of fact and conclusions of law and also references to the facts found as set forth in the journal entry, a motion for judgment on the competent evidence and a motion for a new trial. These motions were all heard by the Honorable Donald C. Magaw, then acting as judge pro tem, and were denied. Thereafter defendants perfected an appeal to this court, specifying error in fourteen particulars, some of which overlap others, but all of which are treated herein although not in the order presented.

Appellants complain the trial court erred in not making written findings of fact and conclusions of law on September 23, 1950. The record does not disclose that either party made such a request. The trial court did direct the parties to submit their requested findings. When the trial court made findings of fact on September 23, 1950, by oral statement, no one objected. The statements were transcribed and are set forth in the abstract. While appellants are not

satisfied therewith, that they were made is not disputed. No error appears on this account.

Appellants also complain that the term of Judge Allison had expired and that he was without power to make the findings and conclusions filed October 17, 1950. We do not think it necessary under the circumstances to discuss the question of his power. The findings of fact there included are substantially those made on September 23, 1950, but in our consideration of the appeal we shall restrict our examination to the findings as first made.

Generally, consideration of the remaining specifications requires a short review of the evidence. We recognize there was dispute in some of the testimony, but in view of the findings of fact and the judgment rendered we are concerned only with evidence that supports the findings and judgment.

On January 26, 1950, the school board of the defendant district held a joint meeting with the school board of common school district R-5, the territorial limits of which included some lands common to both districts. As disclosed by the minutes of the defendant district the meeting was between the two boards and an agreement was reached "to go ahead with the school improving program for the Hunter School System." At this meeting, there was discussed the question of building an addition to the rural high school building to provide a gymnasium for the high school and three or four class rooms for the common school and a large picture, concededly showing an architects conception of what the improvement would look like was shown and smaller copies were distributed to patrons present, and there was some discussion that the completed combined projects would cost $150,000, and that if it was built the rural high school district would pay $95,000 and the common school district would pay $55,000. Following that meeting the common school district called an election to vote $55,000 of bonds, an election with which we are not presently concerned. On February 14, 1950, the defendant district school board at a special meeting adopted a resolution that it was necessary to equip, enlarge, remodel, repair and improve the existing schoolhouse by "Constructing and equipping a gymnasium adjoining the present High School Building"; that it was necessary to issue bonds in the amount of $95,000, and that a special election should be held on March 20, 1950, to vote on the proposition, as stated in the resolution and as later stated in the ballots used, viz:

"Shall the following be adopted?

"Proposition to issue bonds of Jt. Rural High School District No. 1 Mitchell and Lincoln Counties, Kansas in the amount of $95,000.00 to pay the cost of equipping, enlarging, remodeling, repairing, and improving the existing school house at Hunter in said district.

"To vote. . . ."

At the election a total of 345 ballots were cast. Of this total two were rejected as not complying with the statute. Of the remaining 343, it was found by the election board that 173 were in favor of the proposition and 170 were against it. There was evidence also that two persons were furnished ballots in the street in front of the polling place, which were carried into the polling place and deposited; that three persons who voted in favor of the proposition were nonresidents of the district and not legally qualified electors of the district, and that the two ballots which were rejected by the election board had the word "No" written outside the square in which a cross had been marked.

Appellants contend that the trial court erred in admitting in evidence testimony as to the agreement of the two boards to build a joint building, their contention, in substance, being that there was no allegation in the petition that warranted it. In our opinion this evidence was relevant and material under the allegation that the notices of election were irregular and illegal and did not inform the electorate of the nature, extent and cost of the improvement. Complaint is also made of the so-called voluntary testimony on cross-examination of plaintiffs' witness, an assessor, that the father of one voter, later found to be a nonresident of the district, had stated his son did not live with him. Appellants' motion to strike on the ground the statement was hearsay was overruled. Assuming the statement should have been stricken, there was other evidence of which no complaint is made, as to the nonresidence and the error, if any, was not prejudicial.

Appellants' contention that the trial court erred in not sustaining their demurrer to the plaintiffs' evidence covers a number of matters. It is contended that the ballots on which the voter wrote the word "No" beside the square in which a cross had been made were such that they should not have been counted. We need not discuss the correctness of this contention for reasons later stated. Appellants review their argument that proof as to a joint building was inadmissible, and that absent that proof the plaintiffs failed to prove a cause of action. We have previously held that testimony was

proper. Appellants further contend that the proof was insufficient to show that three persons who voted were nonresidents of the district. As to this contention we find it somewhat difficult to know exactly what the testimony shows. There is no showing of the boundaries of the school district, nor how much territory of the district did or did not lie in a certain named township. Two persons were said to live in the named township but in what part is not shown. We gather that the school district had no territory within that township. These two persons made statements they voted for the bonds. The other witness was said to live in another county but how he may have voted was not shown. The matter of counting votes is later treated. We think however it may not be said the trial court erred in ruling on their demurrer for the reasons asserted by the appellants.

Appellants further contend the trial court erred in its findings of fact. While the complaint covers others matters, determination of this appeal may rest on either of two grounds. If it be held the evidence supports the trial court's finding that the defendant school district and its official board contemplated joining with the local common school district in an improvement to the rural high school building that would result in rooms for the common school, all to be erected at a proposed cost of $150,000 and to pay the same the rural high school district would issue bonds of $95,000 and the common school district would issue bonds of $55,000, that of itself disposes of this appeal and other findings become immaterial. Although appellants complain of the facts found, and direct attention to testimony tending to prove the contrary, we are of the opinion that the testimony supports the finding.

Concededly, the defendants were proceeding under G. S. 1949, 72-2016, which authorizes any rural high school district, or common school district, upon compliance with its provisions to adopt a resolution of necessity therefor and to issue bonds to raise funds to be used to pay the cost of equipping, enlarging, remodeling, repairing and improving an existing schoolhouse, provided the question

shall have been submitted to the qualified electors of the district and a majority of all the qualified electors voting on the proposition shall have declared by their ballots in favor of the issuance. Absent other matters, it may be said that the proposition as stated in the board's resolution and on the ballots voted was unambiguous. On the other hand, the evidence and findings disclose that the rural high school board expected to co-operate with the common school board and to make improvements to the rural high school building that would be for the benefits of both districts and would cost $150,-000, of which the defendant district would pay $95,000. There is no contention made that such a result, which might have been accomplished under G. S. 1949, 72-317, is or was being attempted here. While it would perhaps be true that an elector who had attended the joint meeting of the two school boards would have learned of the plan, he would have learned of it through that meeting and not from any language in the resolution calling the bond election, the notice of the election or the proposition as stated on the ballots. An elector who did not attend the meeting or did not otherwise learn of the plan would never discover from the proposition as stated in the resolution, election notice or ballot, just what the school board actually proposed to do.

The general question presented has been treated on a number of occasions by this court in cases arising under the statute presently involved and under others of similar character, and while the facts of each case vary in particulars, it is clear from each case that election notices and ballots must clearly inform the voters as to the question submitted; that although the proposition may be stated in unequivocal terms, it must be informative of the whole and not of a part only of the proposed improvement, and of the funds applicable to the payment and the amount of bonds to be issued therefor. See *Board of Education v. Powers,* 142 Kan. 664, 51 P. 2d 421; *Henson v. School District,* 150 Kan. 610, 95 P. 2d 346; *Byer v. Rural High School Dist. No. 4,* 169 Kan. 351, 219 P. 2d 382, and cases cited therein.

We have examined other complaints under different headings pertaining to proceedings before Judge Allison but they have been answered by our determination of the issues as heretofore treated and require no further discussion. Under separate headings, appellants complain of rulings by Judge Magaw on their post trial motions. The burden of these complaints is that there was error in the pretrial rulings and judgment, and that their post trial motions should have been allowed. We discern no error in the rulings on such motions.

The judgment of the trial court is affirmed.