No. 44,905

THOMAS M. EVANS, *Appellant*, v. JOHN A. and MAUREEN C. LYNCH, *Appellees*.

(436 P. 2d 867)

Opinion filed January 27, 1968.

*Frank C. Sabatini*, of Topeka, argued the cause and was on the brief for the appellant.

*Arthur E. Palmer*, of Topeka, argued the cause, and *Marlin S. Casey, Ernest J. Rice, Murray F. Hardesty, Glenn D. Cogswell, Gerald L. Goodell, Wayne T. Stratton, Robert E. Edmonds*, and *Thomas E. Wright*, all of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This action stems from a series of transactions occurring in 1963 and 1964 which the plaintiff, Thomas M. Evans, contends resulted in an agreement on the part of Dr. and Mrs. Lynch, the defendants, to purchase certain real estate. The trial court sustained the defendants' motion for summary judgment and the plaintiff has appealed. The parties will be referred to either by name or as plaintiff and defendants, respectively.

On July 15, 1963, the parties entered into a written lease under

the terms of which the defendants leased a Topeka residence from the plaintiff for a term of twelve months, commencing July 22, 1963, at a monthly rental of $225. The lease contained a provision giving defendants the right to purchase the property during the period covered by the lease for the sum of $36,000, less a credit of one-half the rent already paid.

Contemporaneously with the lease the parties executed a written agreement which provided that Evans, in consideration of the lease, granted defendants the option to purchase the property on the following terms: 1. Dr. and Mrs. Lynch agreed that prior to January 22, 1964, they would enter into a purchase agreement with plaintiff or give written notice they did not wish to purchase. 2. If defendants declined to buy the property, the written lease should remain in force until its natural expiration. 3. Should defendants elect to buy the property, a purchase agreement should be executed forthwith. 4. That if the defendants moved from Topeka after the option was exercised, but before July 22, 1964, plaintiff would repurchase the property under certain prescribed conditions.

On January 14, 1964, the parties executed an additional written agreement extending the defendants' option from January 22, 1964, to April 22, 1964, and providing that all other covenants contained in their original agreement should remain in full force. It was at this time, according to plaintiff's answers to interrogatories, that Dr. Lynch orally promised to buy the property unless he moved from Topeka and that plaintiff relied thereon in extending the option.

In March, 1964, Dr. Lynch had a talk with Dana Anderson, the plaintiff's agent, in which the price of the house was discussed. Anderson then got in touch with Evans who lowered the price of the house to $32,000. Lynch, however, would neither accept this new proposal nor make a counter offer, as requested by Anderson. Soon after the foregoing conversation took place, Lynch notified Anderson that he would not purchase the house and also gave a thirty day notice of his intention to move. Lynch adopted this course of action because he and his wife decided to buy another house. It is conceded that Dr. Lynch did not move from Topeka but that he and his wife are still living in that city.

We believe the trial court was correct in entering summary judgment for the defendants, since it is apparent that no *material* issue

of fact was in dispute. Where appropriate pretrial procedures reveal there are no unresolved issues of material facts, an action may be disposed of summarily under the provisions of K. S. A. 60-256. (*Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964; *Wilson v. Deer*, 197 Kan. 171, 415 P. 2d 289.)

It is nowhere contended that a *written* contract for the sale of plaintiff's house was ever executed. The only reference we find in the record which concerns a contract of sale appears in the plaintiff's answers to interrogatories, where he states that at the time the defendants' option was extended, Dr. Lynch represented he would buy the house unless he moved from Topeka. This alleged representation, admittedly oral, is construed by Evans as constituting a promise on Lynch's part to purchase the house.

Dr. Lynch vigorously denies making any such oral promise to purchase, but whether he did or not is immaterial so far as this case is concerned. An oral agreement for the sale of real estate is unenforceable under the statute of frauds (K. S. A. 33-106) unless it has been removed from the statute by partial performance. (*Baldridge v. Centgraf*, 82 Kan. 240, 108 Pac. 83.) This elementary proposition is recognized by the plaintiff, but he points out that the present action is not brought to enforce the contract but simply to recover damages for its breach.

The distinction thus attempted to be drawn, is wholly specious. A contract which is unenforceable under the statute of frauds affords no basis for an action to recover damages resulting from its breach. The general rule is stated in 49 Am. Jur., Statute of Frauds, § 539, p. 839:

"It is a general principle that an invalid or unenforceable contract forms no basis for an action for damages occasioned by the breach of any obligation attempted to be imposed thereby. . . ."

This rule has long been recognized in Kansas. In *Leis v. Potter*, 68 Kan. 117, 74 Pac. 622, this court said:

". . . A contract for the purchase of land is within the statute. . . . Since the contract is one that cannot be enforced, no action for damages will lie for its breach." (Citing cases.) (p. 121.)

(See, also, *Kiser v. Richardson*, 91 Kan. 812, 139 Pac. 373; *Casey v. Diehl*, 84 Kan. 443, 113 Pac. 1046.)

The plaintiff also maintains that the alleged oral agreement was taken out of the statute by a partial performance on his part. In this regard Evans stated in answer to interrogatories that he relied

on Lynch's representation he would purchase the house and that he, Evans, changed his position by extending the option, with the result that market conditions changed to his detriment. In our view, the facts of this case fall far short of meeting the test required for removing an oral agreement from the statute of frauds.

It should be borne in mind that the Lynches actually had two options to buy the Evans house, one by virtue of the written lease, which would expire July 22, 1964, and the other by reason of the agreement signed the same day as the lease, which extended to January 22, 1964. Thus, on January 14, 1964, when the latter option was extended, the plaintiff's house was also subject to the option granted by the lease, and that option had more than six months to run. Under these circumstances, we are at a loss to understand how an extension of the latter option could possibly operate to plaintiff's disadvantage. His situation in regard to the sale of his house cannot be said to have changed materially because of the existing option granted in the lease. (See discussion in 49 Am. Jur., Statute of Frauds, § 580, pp. 885-887.) We might also observe at this point that it seems highly unlikely that Dr. and Mrs. Lynch would seek to obtain an option to buy the plaintiff's house and at the same time bind themselves by an agreement to purchase it.

We believe this is not the sort of situation contemplated by the rule of partial performance. The plaintiff seeks in this action to recover the fruits of his bargain, not to be recompensed for expenses incurred or services performed in reliance on an oral agreement. Neither of the two cases cited by the plaintiff can be of much comfort to him. In *Baldridge v. Centgraf*, supra, the trial court refused to decree performance of a contract for the sale of land even though the purchaser had put up his check and had taken possession. This court, on appeal, upheld the judgment of the lower court, although we indicated that had the purchaser erected permanent improvements on the land a case would be presented for equitable relief.

The earlier case of *Deisher v. Stein*, 34 Kan. 39, 7 Pac. 608, was one in which the purchaser under an oral contract had taken possession of the property and had expended time, labor, money and materials on its improvement. These circumstances, it was said by the court, took the case out of the statute of frauds.

The plaintiff points out that the statute of frauds was designed to prevent fraud, not to reward or encourage it. We may concede

this to be true. However, the plaintiff does not bottom his case on fraud or deceit. He neither alleges the essential elements of fraud, nor does he in his answers to interrogatories, make out a cause of action predicated on fraud or false representation.

After careful examination of the record, and of the authorities cited by counsel for both litigants, we conclude that no error has been established on the part of the trial court. Accordingly, the judgment is affirmed.

O'CONNOR, J., not participating.